**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2983
_____

UNITED STATES OF AMERICA

v.

KHALED MIAH,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-21-cr-00110-001)
District Judge: Honorable W. Scott Hardy
_____

Argued June 10, 2024
_____

BEFORE:  CHAGARES, *Chief Judge*, RESTREPO, and
FREEMAN, *Circuit Judges*

(Filed: September 20, 2024)

Sufia M. Khalid
Charles D. Swift
Muslim Legal Fund of America
100 N Central Expressway
Suite 1010
Richardson, TX 75080

Allie J. Hallmark [ARGUED]
Hamilton Wingo
325 N St. Paul Street
Suite 3600

Dallas, TX 75201
 *Counsel for Appellant*

Laura S. Irwin
Direct: 412-894-7374
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

Jeffrey M. Smith [ARGUED]
United States Department of Justice
National Security Division, 6521
950 Pennsylvania Avenue NW
Washington, DC 20530
 *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge*

Khaled Miah threatened FBI agents over social media, specifically targeting the agents investigating his online activities. A jury convicted Miah of issuing interstate threats, threatening to assault FBI agents, and knowingly deleting social media accounts and postings with the intent to impede their investigation. He received a sentence of six years' imprisonment followed by three years' supervised release. On appeal, Miah raises claims of trial court error and contends that his sentence is illegal. After thoughtful review, we will affirm the judgment of sentence.

In September 2020, FBI Special Agent Nick Edquist and an officer from the Joint Terrorism Task force went to Miah's apartment to interview him about his comments on several social media platforms. Miah's comments drew the FBI's attention because they suggested he believed in a "particular extremist ideology," consisting of a "vengeful,

violent form of Islam." A697, A701.[1] Miah was not cooperative during the initial interview and in fact filed a complaint against the FBI. He agreed to another interview the following day but was again uncooperative, refusing to answer the agents' questions about his online conduct.

On October 8, 2020, Miah created a Twitter account named after Agent Edquist's wife that contained pictures of her and her personal information, including her approximate age, place of employment, education, and religion. The next day agents executed a warrant to search Miah's home and devices.[2] Miah admitted to creating the tweets but claimed they were a joke and that he would not post such content again. He instead immediately resumed creating tweets featuring Agent Edquist and his wife, as well as tweets providing personal details about Agent Edquist's supervisor.

In December 2020, Miah created a second Twitter account with the name "Federal Intelligence Service" and a profile photo of a mock FBI seal. It was on this account that Miah posted the statements that underlie the charges for which he was convicted. On December 27, 2020, Miah tweeted, "Nick, Dave, Mike, the whole bureau, the deed will be done at a time which is the most opportunistic for me, chosen by myself." A1100. He followed with, "Currently eating pasta and watching videos of the second plane hit the south tower." A1100. The next day, Miah tweeted, "The zero hour is

---

[1] Agent Edquist testified at trial that the tweets included incendiary language encouraging violence against Christian-majority countries, an "explicit call to attack Jews," and the glorification of the September 11, 2001 terrorist attacks. A698-70.  The FBI's physical surveillance revealed that Miah frequently went alone to the local shooting range.

[2] The search of the devices revealed that Miah had gone to gun stores to research different types of weapons, "specifically weapons that had suppressors on the gun and things like that." A1074.  The devices contained photographs of assault rifles and Miah dressed in a manner that appeared to the agents as emulating ISIS fighters. They also contained multiple pictures of the Tsarnaev brothers, who committed the 2013 Boston Marathon terrorist attack.

3

approaching." A1104. On December 29, 2020, Miah tweeted, "38° 53' 42.7'' N, 77°1' 30'' W," which are the coordinates for the FBI headquarters in Washington, D.C. A1106-07; A1936. The following day, he posted, "Rasheed, Dave, Nick, Mike . . . . how's your investigation going? Things are looking 'bright' in 2021. Did you find the Saudi passports?" A1107-08. Later he tweeted, "2001-2021 is 20 years. An entire generation, yet men like me still exist and pop up into existence. Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet." A1108-1110. Finally, on December 31, 2020, Miah tweeted, "Remember boys, the more eyes on me, the less eyes on others. Regardless, yellow tapes will flow." A1112.

Miah was arrested and later indicted on a total of eight counts by a grand jury in the Western District of Pennsylvania on March 16, 2021. Counts One through Five alleged interstate threats in violation of 18 U.S.C. § 875(c), Counts Six and Seven alleged threats to assault FBI agents in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4), and Count Eight alleged the destruction, alteration, or falsification of records in a federal investigation in violation 18 U.S.C. § 1519.

Prior to trial, Miah moved to dismiss Counts Two, Three, Five and Seven of the indictment, claiming that the December 2020 tweets did not qualify as threats to injure the agents or as "true threats" under First Amendment jurisprudence. Miah also argued the statutes he was charged under were too vague to warn him that his communications were illegal.

The District Court denied the motion, ruling that the indictment provided sufficient context for a reasonable jury to conclude that the tweets expressed an intent to injure the agents and constituted true threats unprotected by the First Amendment. It also denied Miah's vagueness claim, finding that he had "a reasonable opportunity to understand that the conduct, as charged in the Indictment, would be prohibited by the statutes." A166.

Also prior to trial, the government moved for an in-limine ruling to admit numerous exhibits of other-acts evidence. Miah opposed the motion. The District Court granted

the motion in part and denied it in part, ruling the proffered evidence was not intrinsic but that some of the exhibits were admissible under Federal Rule of Criminal Procedure 404(b). The Court deemed admissible the evidence that provided the "context and foundational basis" for the FBI's initial investigation of Miah, A240, as well as those exhibits that were "probative of [his] state of mind" when sending the charged communications. A251.[3]

The jury convicted Miah of all five interstate threat counts, one count of threatening to assault FBI agents, and one count of destroying evidence to obstruct their investigation. At sentencing, the Court applied enhancements for conduct evidencing the intent to carry out the threats, U.S.S.G. § 2A6.1(b)(1), and for obstructing justice by deleting threatening communications for which he was charged, U.S.S.G. § 3C1.1. The District Court varied downward from the calculated Guideline range of 78 to 97 months imprisonment to impose a term of 72 months imprisonment, to be followed by three years of supervised release. This appeal followed. We have jurisdiction to review Miah's claims pursuant to 28 U.S.C. § 1291.

I.

Miah's first claim is that the District Court erred by denying his motion to dismiss the threat charges tied to Counts One, Two, Three, and Five of the indictment. Specifically, he contends the indictment failed to allege facts establishing that the tweets threatened to harm people, which is required for a Section 875(c) conviction. Miah asserts the indictment at most established that he communicated generalized threats to commit terroristic attacks, a crime for which he was not charged. He further alleges the indictment did not sufficiently establish the tweets were "true threats" that expressed a sincere intent to commit violence against the agents, which means they were entitled to First Amendment protection.

---

[3] In its lengthy memorandum opinion, the District Court ruled to exclude an exhibit demonstrating a prior stalking incident, A241, and various social media posts that purportedly reflected Miah's "violent and hostile mentality." A256

Miah's challenge as to the sufficiency of the indictment is a legal question over which this Court exercises plenary review. *United States v. Stock*, 728 F.3d 287, 291 (3d Cir. 2013). This Court in *Stock* observed that "whether a statement constitutes a threat under § 875(c) is based on the context and totality of the communication," which means the indictment must include sufficient context for the District Court "to determine that a reasonable jury could find that [the charged] statement expressed an intent to injure in the present or future." *Id.* at 301. Here, the District Court found the indictment provided sufficient context to present the threat charges to the jury, both under Section 875(c) and the First Amendment. We agree.

A person violates Section 875(c) by "transmit[ting] in interstate or foreign commerce any communication containing . . . any threat to injure the person of another." 18 U.S.C. § 875(c). Miah argues the tweets that do not identify a natural person as their target—such as "the zero hour is approaching" or the coordinates of the FBI headquarters—cannot be lawfully charged as threats under Section 875(c). This argument overlooks that the context and totality of circumstances of the communications must be considered when assessing whether a threat has been alleged. The indictment provided both context and circumstances by describing Miah's retaliatory targeting of Agent Edquist's wife, his inclusion of the names of the investigating agents in his tweets, the contents of his devices revealing an "interest in weapons, his fascination with violence, and his strong animosity toward law enforcement," and his recurring surveillance of Agent Edquist's residence and the FBI Pittsburgh Field Office. A45.

Thus, the District Court properly ruled Miah's tweet "the zero hour is approaching," which it found indicated "the occurrence of a significant event," could be deemed a threat by a reasonable jury given that it was posted the day after the tweet referencing the September 11, 2001 terrorist attack. A158. Similarly, the Court properly concluded the coordinates of the FBI's headquarters, when viewed through the lens of Miah's conduct and preceding tweets, could be found to "constitute[] a threat to injure agents at that location." A158. It was also correct to conclude that the tweet telling the "boys," who were agents named in a prior tweet, that "yellow tapes will flow,"

6

which appears to reference crime scene tape, could reasonably be interpreted as a threat to inflict harm. A158. In sum, we agree that the charges alleging a violation of Section 875(c) were properly put to the jury. *See United States v. C.S.*, 968 F.3d 237, 245 (3d Cir. 2020) (holding that context and circumstances of statements could enable a reasonable person to view them as serious threats).

We also conclude a reasonable jury could find Miah's tweets communicated "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" and therefore constituted true threats under First Amendment jurisprudence. *United States v. Davitashvili*, 97 F.4th 104, 109 (3d Cir. 2024) (citing *Virginia v. Black*, 538 U.S. 343, 359 (2003)). As with violations of Section 875(c), we look to Miah's earlier conduct to "contextualize the meaning" of his tweets. *Id.* at 110. As discussed, the conduct outlined in the indictment established Miah's antipathy for specific agents, as well as his animosity towards law enforcement in general. It also demonstrated Miah's captivation with weapons and terroristic-style attacks. We therefore agree with the District Court that a reasonable jury could find Miah's contextualized tweets expressed a serious intent to harm the agents and hold that threats targeting FBI agents generally are sufficiently particularized to qualify as true threats. *Id.* at 111 (citing *United States v. Khan*, 937 F.3d 1042, 1046 (7th Cir. 2019) (holding that threats to harm "an entire city region" counted as sufficiently particularized)).

To the extent Miah raises a vagueness challenge regarding his convictions under Section 875(c), we deny this claim as well. A conviction under 18 U.S.C. § 875(c) requires proof of both a subjective and an objective component; the subjective component is satisfied if the defendant transmitted a communication for the purpose of issuing a threat or with the knowledge it would be viewed as one. *United States v. Elonis*, 841 F.3d 589, 596 (3d Cir. 2016). This subjective component alleviates concerns that "a defendant will be convicted for an action that he or she committed by mistake." *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009). Here, we agree with the District Court that Miah's conduct prior to issuing the December 2020 threats—which included his refusal to cooperate with the agents, his social media posts targeting

Agent Edquist's wife, his surveillance of Agent Edquist's house and the Pittsburgh FBI Field Office, his frequent trips to gun ranges, and his research into different weapons and past terroristic attacks—established that he knew his communications would be viewed by those agents investigating him as threats. *C.S.*, 968 F.3d at 246.

We will therefore affirm the District Court's denial of Miah's motion to dismiss charges in the indictment.[4]

II.

Miah next claims that the District Court's decision to close the courtroom during *voir dire* proceedings violated his Sixth Amendment right to a public trial. Specifically, he contends the procedure of screening prospective jurors in open court before questioning the remaining panel members in a closed courtroom warrants the grant of a new trial. We conclude that Miah is not entitled to relief.

Firstly, Miah has not provided the notes of the *voir dire* proceedings for us to review to decide this claim. Under Federal Rule of Appellate Procedure 10(b)(1)(A), Miah was required to "order . . . a transcript of such parts of the proceedings not already on file as [he] considers necessary." In addition, this Court's Local Appellate Rules require that the appendix include "[r]elevant portions of a trial transcript, exhibit, or other parts of the record . . . at such length as may be necessary to preserve context." L.A.R. 30.3(a); *see also* L.A.R. 11.1 (outlining appellant's duty to transmit the trial court transcript). Miah's failure to provide a transcript of the *voir dire* proceedings renders the alleged Sixth Amendment violation unreviewable and serves as grounds to dismiss the claim. *See* Fed. R. App. P. 3(a)(2) (providing that failure to comply with procedural rules allows the court to act "as it

---

[4] To the extent Miah challenges the charge under 18 U.S.C. § 115(a)(1)(B), which prohibits threatening a federal law enforcement officer, we hold the indictment was sufficient. Miah, operating within the context of having contempt for law enforcement and a fixation with extreme violence, named the agents investigating him while referencing the September 11, 2001 terroristic attacks.

considers appropriate, including dismissing the appeal"). Because we will not reverse a conviction and grant a new trial without first reviewing the relevant portions of the record, we deem it appropriate to hold this claim forfeited. *See Morisch v. United States*, 653 F.3d 522, 529–30 (7th Cir. 2011) (noting the inability to conduct "meaningful review" of a claim without a transcript and the failure to order a transcript can be grounds for forfeiture).

In any event, the parties agree that the jurors were screened in open court but were individually questioned about their potential anti-Muslim bias in private. Miah acknowledges that he did not object to the District Court's procedure nor claim it interfered with his right to a public trial, which means we would review this issue for plain error. Fed. R. Crim. P. 52(b). Thus, a new trial would only be justified if the District Court committed an obvious error that affected Miah's substantial rights, as well as the "fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732-36 (1993).

It is well established that a defendant's Sixth Amendment right to a public trial "extends to the *voir dire* of prospective jurors." *Presley v. Georgia*, 558 U.S. 209, 213 (2010). Thus, the closing of a courtroom is an obvious error that "by [its] very nature, 'affect[s] substantial rights' and so cannot be 'disregarded.'" *United States v. Williams*, 974 F.3d 320, 340 (3d Cir. 2020) (citing Fed. R. Crim. P. 52(b)). But, unlike in *Williams*, the courtroom was not closed for the entire *voir dire* proceeding. Presumably the initial screening of the prospective jurors took place in open court, followed by the individual *voir dire* that took place in private. It is also presumed that Miah and the attorneys for both sides were present for the entire *voir dire*. Miah does not claim that any member of the public (or press) requested and was denied access to the private portion of the questioning. Applying plain error review, we have previously decided that similar circumstances do not violate the Sixth Amendment right to a public trial. *United States v. Bansal*, 663 F.3d 634, 661 (3d Cir. 2011). Thus, even if this claim had not been forfeited, there was no plain error.

9

III.

Miah next challenges the District Court's decision to admit "other acts" evidence pursuant to Federal Rule of Evidence 404(b). He contends the Court abused its discretion in admitting exhibits relating to four subjects: (1) his comments on YouTube where he intimated that a terroristic attack was imminent; (2) exhibits consisting of "firearm and gun-range evidence" and "[r]esearch and images" of different types of explosive devices; (3) exhibits relating to the "Tsarnaev brothers," who perpetrated the Boston Marathon bombing in April 2013; and (4) a video where he expressed anti-police sentiments and sang "about ISIS." Appellant Br. 36, 38, 40, 43, 45. In addition, Miah alleges the District Court's curative instructions were inadequate to cure any undue prejudice caused by admitting the contested evidence. We conclude no such prejudice occurred and affirm the evidentiary rulings made by the District Court.

We review evidentiary rulings for abuse of discretion, noting that an abuse occurs only if a ruling is "arbitrary, fanciful, or unreasonable." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (citing *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 519 (3d Cir. 2003)). To the extent Miah argues the evidence fell outside the scope of Rule 404(b), we exercise plenary review of the Court's interpretation of the Federal Rules of Evidence. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010) (citing *United States v. Cruz*, 326 F.3d 392, 394 (3d Cir. 2003)).

Rule 404(a)(1) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). This prohibition does not prevent evidence of "other crimes, wrongs or acts" from being admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

A four-part test governs the admissibility of other-acts evidence under Rule 404(b). Such evidence must: (1) have a proper, non-propensity purpose; (2) be relevant to that non-

propensity purpose; (3) satisfy the requirement under Federal Rule of Evidence 403 that its probative value is not substantially outweighed by the risk of unfair prejudice; and (4) be accompanied by a limiting instruction where requested. *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). The party seeking admission, here the government, "must do more than conjure up a proper purpose—they must also establish a chain of inferences no link of which is based on a propensity inference." *United States v. Smith*, 725 F.3d 340, 345 (3d Cir. 2013).

In its memorandum opinion, the District Court addressed the admissibility of the proffered evidence, articulating "those inferential chains when readily apparent and discernable from the record." A238 (citing *Repak*, 852 F.3d at 245). Regarding Miah's comments on YouTube, the Court found the evidence provided a "context and foundational basis for why the FBI agents began investigating [him]," which in turn "led to [his] subsequent interactions with the agents, including his charged conduct." A240.[5] Given the evidence's relevance, the Court found that any potential for prejudice "was not substantial enough" to outweigh its probative value. *Id.* We agree. In *Green*, this Court held that other-acts evidence admitted to provide "helpful background information to the finder of fact" constitutes a proper purpose under Rule 404(b). 617 F.3d at 250. Evidence of Miah's comments on YouTube explained to the jury "why [he] was under investigation," which in turn "completed the story of the crime." *Id.* Accordingly, the admission did not constitute an abuse of discretion.[6]

---

[5] The District Court also found this evidence demonstrated that the FBI agents were "engaged in the performance of their official duties," a requisite element of 18 U.S.C. § 115 (a)(1)(B) (Counts Six and Seven), while conducting their investigation under the jurisdiction of a federal agency, a requisite element of 18 U.S.C. § 1519 (Count Eight), when Miah issued the charged communications. A240. We agree.

[6] Miah takes issue with the District Court conducting the analysis after finding that the government failed to meet its burden of establishing the contested exhibits served a non-propensity purpose. This was not error. In *Repak*, this Court

11

We reach the same conclusion regarding the exhibits establishing Miah's connection to firearms, tactical gear, and types of explosives. The first six exhibits establish Miah's familiarity with firearms and wearing tactical gear, which the Court found were "probative of [the] knowledge and intent" behind the charged communications. A246. The last four convey Miah's "research into weapons and attempts to build explosives at home," which provide "contextual and circumstantial evidence tending to make more probable the likelihood that a reasonable person would consider [his] charged communications to be serious expressions of an intent to inflict serious bodily injury." A246, A254. We agree with the District Court that these exhibits were relevant to Miah's subjective mental state when he issued the threats and are therefore "probative of a material issue other than character." *United States v. Cross*, 308 F.3d 308, 321 (3d Cir. 2002) (citing *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). Moreover, the content of the admitted evidence is closely related to the conduct outlined in the charged communications—the reasonable inference from the exhibits is that Miah had the knowledge and means to carry out his threats of violence.[7] Because the exhibits were admitted for non-propensity purposes, we conclude there was no abuse of discretion.

---

conducted a proper Rule 404(b) analysis and deemed the "other-acts" evidence admissible after concluding both the District Court's and the government's analysis lacking. 852 F.3d at 242, 244. In so doing, the *Repak* Court assessed the record, much like the District Court did here, and found the necessary chain of inferences supporting the exhibits' admission. *Id*.

[7] Miah argues that evidence of his subjective intent to carry out the charged threat is not relevant. To support this claim, Miah cites *United States v. Himmelwright*, 42 F.3d 777 (3d Cir. 1994). The *Himmelwright* decision was abrogated by the Supreme Court in *Elonis v. United States*, 575 U.S. 723, 737-40 (2015), which held that the government must prove the defendant's subjective intent to establish a violation of Section 875(c).

Miah next contends the District Court erred in admitting exhibits relating to the Tsarnaev brothers who committed the 2013 Boston Marathon bombing. The District Court deemed the exhibits admissible because they tended to make his motive and intent in making the threats "more probable than without such evidence." A248.[8] The Court recognized that one of the exhibits—the July 2018 social media post—was created prior to the start of the FBI's investigation but found it relevant because it illustrated "his emulation of the Tsarnaevs" and "his intention for instilling terror." A257. We agree there is a connection between the charged communications and this post, especially given that Miah's defense at trial was that the December 2020 tweets were not serious expressions of his intent to inflict harm. The Tsarnaev exhibits show Miah's history of mimicking terrorists, which makes them probative of whether he intended to threaten a similar type of attack. *United States v. Willis*, 844 F.3d 155, 170 (3d Cir. 2016) (holding evidence of past conduct admissible under Rule 404(b) to demonstrate the defendant's state of mind in accepting bribes).

Finally, Miah challenges the admission of a video recorded in February 2018 on his phone, which shows him in front of a police car expressing an anti-police sentiment and singing about ISIS. The District Court admitted the video because it demonstrated Miah's "animosity toward law enforcement, thus making it more likely that [he] was motivated to make true threats against the FBI agents." A244. Miah challenges the admission, arguing that it invited the jury

---

[8] There was a total of six Tsarnaev exhibits: five were images of the Tsarnaev brothers dated between January and August 2020 (A1837, A1836, A1832, A1833); and one was a social media post from July 2018 with a comment referencing "the 2 brothers in Boston" (A1850). Although the July 2018 post was addressed separately in the District Court's memorandum opinion, the Court cited the same reasons for its admission as the other exhibits: that it "may tend to make one of Defendant's motives (*i.e.*, emulating the Tsarnaev brothers) and his intent (*i.e.*, the power of instilling terror) for making the charged threat communications more probable than without such evidence." A257.

to draw conclusions about his character. Appellant Br. 45. Regardless of whether such conclusions could have been drawn, the video was probative of Miah's incentive for threatening law enforcement with a terrorist attack, and this probative value was not substantially outweighed by the risk of unfair prejudice to Miah. Because the exhibit demonstrated something other than character, the District Court properly exercised its discretion.

Miah argues that the District Court erred in applying Federal Rule of Evidence 403 because the cumulative impact of the other-acts evidence led the jury to improperly infer propensity, causing the prejudicial effect to outweigh any probative value. Initially, we note that the District Court's balancing pursuant to Federal Rule of Evidence 403 is due great deference, with reversal justified only if the court's conclusion is "arbitrary or irrational." *United States v. Bergin*, 682 F.3d 261, 279-80 (3d Cir. 2012) (citing *United States v. Kellogg*, 510 F.3d 188, 197 (3d Cir. 2007)). Next, we recognize that "evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." *Cross*, 308 F.3d at 323 (citing Fed. R. Evid. 403). To establish this substantial imbalance, Miah needed to identify unfair prejudice "based on something *other* than [the evidence's] persuasive weight." *Bergin*, 682 F.3d at 279. Miah has not met this burden. Any prejudice did not outweigh the exhibits' value, especially given his claim that the government failed to prove the subjective component of Section 875(c). The exhibits were persuasive in establishing Miah's subjective intentions in sending the charged communications, his personal knowledge of the subject matter referenced in the tweets, and his understanding that his posts would be interpreted as threats by the investigating agents. Given the highly probative value of the admitted evidence, we will affirm the District Court's balancing under Rule 403.

Miah challenges the limiting instructions issued by the District Court, claiming they suggested to the jury they were "free to consider [his] potential to commit . . . terrorist attack[s]." Appellant Br. 48. A limiting instruction, if requested by the defendant, must "advise[] the jury that the evidence is admissible for a limited purpose and may not be considered in another manner." *United States v. Caldwell*, 760

14

F.3d 267, 277 (3d Cir. 2014). The District Court issued approximately fifteen limiting instructions over the course of the trial. Each identified the purpose the "other acts" evidence served and informed the jury that it may only consider the evidence for that purpose, not as proof of bad character or a propensity to commit crimes. These instructions were then reiterated during the charge to the jury, where the Court again recited the limited purpose served by each piece of Rule 404(b) evidence. Miah's challenge is particularly unpersuasive given that this Court in *Repak* determined that substantially identical instructions were sufficient to mitigate "any concern that the jury would have used [the other-acts] evidence to draw a propensity inference." 852 F.3d at 247. Here, as in *Repak*, there is no indication the jury did not follow the oft repeated instructions in considering the evidence. Accordingly, we will affirm the District Court's evidentiary rulings.

IV.

Finally, Miah challenges the sentence imposed by the District Court. This Court reviews a district court's interpretation of the Guidelines de novo and reviews factual findings relevant to the Guidelines for clear error. *United States v. Ali*, 508 F.3d 136, 143 (3d Cir. 2007) (citing *United States v. Grier,* 475 F.3d 556, 570 (3d Cir. 2007)). When assessing the district court's application of the Guidelines to a particular set of facts and if "th[ose] facts 'fit' within what the Guidelines prescribe," we apply the deferential clearly erroneous standard of review. *United States v. Richards*, 674 F.3d 215, 219 (3d Cir. 2012).

Miah first argues that the District Court erred in imposing a six-level increase in his offense-level under U.S.S.G. § 2A6.1. Such an increase is justified when a defendant is convicted of issuing threats and "the offense involved any conduct evidencing an intent to carry out such a threat." U.S.S.G. § 2A6.1(b)(1). In applying this enhancement, courts must consider conduct that occurred during the crime and any pre-crime conduct that is "substantially and directly connected to the offense, under the facts of the case taken as a whole." *Id*. at application n.1. The District Court found the following overt acts were directly and substantially connected to the threats of conviction:

15

> The Defendant researching the agents as well as their families, where their family members for instance worked, even their pets, traveled to the vicinity of one of the agent's residences, traveled to the vicinity of the agents' place of employment, the Pittsburgh Field Office of the FBI at various times of the day and night, researching weapons, explosives and violence, and then on one instance going to a shooting range on the day he made an actual threat or post.

A1704-05. In making this finding, the Court recognized that Miah was convicted of threatening to injure the named agents as well as those located in the FBI's headquarters by executing terroristic attacks. Because the conduct was directly connected to the threatening communications, the Court did not err in applying this enhancement.

Next, Miah challenges the grouping of his conviction under 8 U.S.C. § 1519, which prohibits the destruction of evidence to obstruct a federal investigation, with his other convictions. Miah violated Section 1519 by deleting the threatening communications that gave rise to Counts One and Two. Application Note 8 of U.S.S.G. § 3C1.1 states that subsection (c) of § 3D1.2 dictates that a conviction for an obstruction offense—here, the deletion of his threatening communications to impede the FBI's investigation—should be grouped with the convictions for the underlying offense—here, the transmitting of the threatening communications. Such grouping prevents multiple punishments for the same offending conduct while accounting for the additional crimes committed. *United States v. Bush*, 56 F.3d 536, 538 (3d Cir. 1995). Miah claims the grouping was improper because his obstructive conduct "cover[ed] a wider range of conduct and time than the threat convictions." Appellant Br. 58. But this argument does not undermine the District Court's finding that Miah's obstruction offense was predicated on transmitting threatening communications. Thus, the District Court properly applied §§ 3C1.1 and 3D1.2(c) in grouping Diaz's offenses and enhancing his total offense level by two levels. *See United States v. Leung*, 360 F.3d 62, 68 (2d Cir. 2004) (affirming that the Guidelines require grouping of passport fraud count with

16

obstruction of justice count where convictions were based on same underlying conduct).

V.

For the foregoing reasons, we will affirm the judgment of sentence.